JUDGE DAVID BRIONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
El PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER,<br><br>Plaintiff,<br><br>v.<br><br>DEBT MEDIATORS, LLC a Florida Limited Company, also known as CM SOLUTIONS LLC, ANTHONY FRANCISCO and ANDREA FRANSISCO<br><br>Defendants. | § § § § § § § § § § § § § § § § § | **EP21CV0278** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is BRANDON CALLIER ("Plaintiff"), a natural person, and was present in Texas for all calls, in this case in El Paso County.

2. Defendant DEBT MEDIATORS, LLC d/b/a/ CM SOLUTIONS, LLC ( "Mediators") is a Florida Limited Liability Company and can be served via registered agent Ann Surjan 1135 Roger Babson Road Orlando, Florida 32808.

3. Defendant ANTHONY FRANCISCO is a natural person, officer and manager of Debt Mediators, LLC and can be served at 11573 Blackmoor Drive, Orlando, Florida 32835.

4. Defendant ANDREA FRANCISCO is a natural person, officer and manager of Debt Mediators, LLC, and can be served at 11573 Blackmoor Drive, Orlando, Florida 32835.

### JURISDICTION AND VENUE

5. <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v.*

1

*Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

6. **Personal Jurisdiction.** This Court has personal jurisdiction over the defendants because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff. Defendants purposefully engaged in deceptive trade practices and Texas has an interest in protecting its citizens from fraudulent behavior.

7. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

8. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a

2

threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1

(2013).

20. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## The Texas Business and Commerce Code 305.053

22. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

23. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## FACTUAL ALLEGATIONS

24. Plaintiff has received a series of pre-recorded calls that began with "Hi, this is Sara from Discover" over the past three months in regard to debt elimination and reduced interest rates. On one of the occasions, Plaintiff "pressed one" and was connected to a live representative from CM Solutions.

25. The Mediators representative had a thick accent that seemed to indicate the call was likely coming from outside the United States. The Mediators representative falsely informed

5

Plaintiff they were from "Card member services" and asked Plaintiff personal information so he could access Plaintiff's credit card accounts without permission. The representative asked for Plaintiff's birthdate, social security number, credit card number, and other identifiable information. After a while the representative transferred Plaintiff to a "Financial Advisor" who also had a thick Indian accent.

26. The representatives state they are calling from "card member services" and "verification team."

27. The Defendants employ offshore unaccountable telemarketers outside the reach of the United States laws in an effort to avoid accountability under the TCPA. The Defendants are aware of the false and misleading statements made by the telemarketers and they approve of and ratify the behavior.

28. The Defendants scheme involves telling consumers to pay their minimum payment on their credit cards for three to four months and then their debt will be eliminated. The Defendants tell consumers to pay the minimum payments in order to buy time and avoid the consumer doing a charge back and reversing the charge.

29. Defendants have approved and adopted a clandestine robocalling operation in which the Defendant does not ever reveal their true identity until the contract is given at the end of the process so they may charge thousands of dollars to credit cards.

30. Defendants Anthony Francisco and Andrea Francisco know about and authorized the fraud being committed and authorize the behavior because it benefits them financially.

31. Plaintiff on multiple times advised the representatives that kept calling him that he was not letting them charge his credit card until they sent him a contract with their information. This

40. Defendants and their agents and co-conspirators amassed lists of thousands of potential customers from public records, and data aggregators and then placed phone calls using auto dialing technology *en masse* to market their products.

41. Defendants participated in, facilitated, directed, authorized, knew of or willfully ignored the unlawful robo calling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robo calling.

42. Defendants have knowledge of and has adopted and maintained TCPA violations as a sales strategy.

43. Defendants refuses to take any action to stop or curtail the unlawful sales practices and robo calling because these practices benefit Defendants financially.

44. Defendants knew the calls were being directed into the Western District of Texas and the Defendant knew these actions could cause the Defendant to be summoned into court as a result of those actions.

45. Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendant prior to the calls alleged herein.

46. Plaintiff has been on the Do Not Call Registry since December 2007.

47. Plaintiff asked for a copy of Defendants Do Not Call Policy and was not given a copy.

48. Each and every call was initiated using a spoofed caller ID, and each and every telemarketer the Plaintiff spoke with failed to properly identify themselves and the parties they were calling on behalf of.

49. Plaintiff received the following calls from the Defendants (Table A).

8

| Call Phone Number | DATE | TIME |
|---|---|---|
| 770-809-0823 | 9/9/2021 | 2:21 PM |
| 614-954-3821 | 9/9/2021 | 10:24 AM |
| 614-954-3821 | 9/9/2021 | 1:54 PM |
| 614-954-3821 | 9/9/2021 | 3:45 PM |
| 614-954-3821 | 9/9/2021 | 3:47 PM |
| 614-954-3821 | 9/9/2021 | 3:53 PM |
| 614-954-3821 | 9/9/2021 | 4:18 PM |
| 614-954-3821 | 9/9/2021 | 4:44 PM |
| 614-954-3821 | 9/9/2021 | 4:51 PM |
| 614-954-3821 | 9/9/2021 | 4:52 PM |
| 614-954-3821 | 9/10/2021 | 11:17 AM |
| 614-954-3821 | 9/10/2021 | 12:00 PM |
| 614-954-3821 | 9/16/2021 | 4:05 PM |
| 614-954-3821 | 9/22/2021 | 9:47 AM |
| 614-954-3821 | 9/22/2021 | 12:16 PM |
| 614-954-3821 | 9/22/2021 | 12:31 PM |
| 614-954-3821 | 9/22/2021 | 12:32 PM |
| 614-954-3821 | 9/22/2021 | 12:33 PM |
| 614-954-3821 | 9/22/2021 | 12:34 PM |
| 614-954-3821 | 9/22/2021 | 1:35 PM |
| 614-954-3821 | 9/22/2021 | 1:44 PM |
| 614-954-3821 | 9/22/2021 | 2:50 PM |
| 614-954-3821 | 9/22/2021 | 2:58 PM |
| 614-954-3821 | 9/22/2021 | 3:07 PM |
| 614-954-3821 | 9/22/2021 | 3:22 PM |
| 614-954-3821 | 9/22/2021 | 3:27 PM |
| 614-954-3821 | 9/22/2021 | 3:32 PM |
| 614-954-3821 | 9/22/2021 | 3:38 PM |
| 614-954-3821 | 9/22/2021 | 4:03 PM |
| 614-954-3821 | 9/27/2021 | 9:39 AM |
| 614-954-3821 | 9/27/2021 | 10:20 AM |
| 614-954-3821 | 9/27/2021 | 12:09 PM |
| 614-954-3821 | 9/27/2021 | 2:16 PM |
| 614-954-3821 | 9/27/2021 | 2:18 PM |
| 936-342-3853 | 10/15/2021 | 9:05 AM |
| 210-920-3130 | 10/15/2021 | 4:26 PM |
| 903-712-3520 | 10/18/2021 | 1:46 PM |
| 817-736-3783 | 10/18/2021 | 1:51 PM |

9

50. Defendants use an unregistered assumed name of CM Solutions, LLC in order to hide their true identity.

51. Each and every call was placed without the maintenance of an internal do-not-call policy.

52. Each and every call failed to identify the telemarketers and parties they were calling on behalf of.

53. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

54. Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

55. No emergency necessitated the calls

56. Each call was sent by an ATDS.

57. None of the defendants ever sent Mr. Callier any do-not-call policy.

58. On information and belief, the defendant did not have a written do-not-call policy while it was sending Mr. Callier the unsolicited calls

59. On information and belief, the defendant did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

60. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

61. Every entity in the application for "credit card debt relief" should be deemed a beneficiary of

the calls and held liable for damages under the TCPA under vicarious liability. Sellers are in the best position to monitor and police third party telemarketer's compliance with the TCPA and to hold otherwise would leave consumers without an effective remedy for telemarketing intrusions.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

62. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

63. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

64. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

65. Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

66. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:

- Reduced Device Storage space and reduced data plan usage
- Invasion of privacy
- Reduced enjoyment and usage of his cell phone
- Reduced battery usage
- Anger and Frustration

### The Plaintiff's cell phone is a residential number

67. The calls were to the Plaintiff's cellular phone 915-383-4604, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff

11

maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

68. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the Defendant violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

69. The calls by the Defendant violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### Violations of the Texas Business and Commerce Code § 302.101

70. The actions of the Defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

71. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### I.    FIRST CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

1. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent.

3. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. Callier also seeks a permanent injunction prohibiting Defendant and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

**(Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))**

**(Against All Defendants)**

1. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

  a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

  b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

  c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

  3. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

  4. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

  5. Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 305.053

  1. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

2. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

3. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

4. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c).**

### FOURTH CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)

1. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

3. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302.**

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for 37 calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G. An award to Mr. Callier of damages, as allowed by law under the TCPA;

H. An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

I. Such further relief as the Court deems necessary, just, and proper.

November 5, 2021,                                    Respectfully submitted,

*[signature]*

Brandon Callier
Pro-se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com

17