**RECEIVED**

January 12, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _Michael Trujillo_

DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**El PASO DIVISION**

| | |
|---|---|
| **BRANDON CALLIER,** § | |
| § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **v.** § | **EP-21-CV-00278-DB** |
| § | |
| **DEBT MEDIATORS, LLC** a Florida Limited § | |
| Company, also known as **CM SOLUTIONS LLC,** § | |
| **ANTHONY FRANCISCO** and **ANDREA** § | |
| **FRANSISCO** § | |
| **Defendants.** § | |
| § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW PLAINTIFF BRANDON CALLIER with his First Amended Complaint herein and alleges and states as follows:

**PARTIES**

1.  The Plaintiff is BRANDON CALLIER ("Plaintiff"), a natural person, and was present in Texas for all calls, in this case in El Paso County.

2.  Defendant DEBT MEDIATORS, LLC d/b/a/ CM SOLUTIONS, LLC ("Mediators") is a Florida Limited Liability Company and can be served via registered agent Ann Surjan 1135 Roger Babson Road Orlando, Florida 32808.

3.  Defendant ANTHONY FRANCISCO ("Mr. Francisco") is a natural person, officer and manager of Debt Mediators, LLC and can be served at 11573 Blackmoor Drive, Orlando, Florida 32835.

4.  Defendant ANDREA FRANCISCO ("Ms. Francisco") is a natural person, officer and manager of Debt Mediators, LLC, and can be served at 11573 Blackmoor Drive, Orlando, Florida 32835

1

## JURISDICTION AND VENUE

5.     Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA

claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs.,*

*LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's

claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the

same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little

complexity to the case.

6.     Personal Jurisdiction.  This Court has general personal jurisdiction over the defendants because

they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they

sell goods and services to Texas residents, including the Plaintiff.

7.     Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a

substantial part of the events giving rise to the claims—the calls and sale of goods and services directed

at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in

this District.  Residing in the Western District of Texas when he received a substantial if not every single

call from the Defendants that are the subject matter of this lawsuit.

8.     This Court has venue over the defendants because the calls at issue were sent by or on behalf of

the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

9.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment

that could target millions of consumers *en masse*.  Congress found that these calls were not only a

nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate

commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968,

1969-71.

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel.*

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

*Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17.     The FCC FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS

159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

22.     The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

23.     The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.  Tx. Bus. Com Code 302.302(a), 302.302(d).

24.     Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302.]"  Tex. Bus. & Com. Code § 302.303.

25.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish."  Tex. Bus. & Com. Code § 17.50.

### FACTUAL ALLEGATIONS

26.     Plaintiff has received a series of pre-recorded calls that began with "Hi, this is Sara from Discover" over the past three months in regard to debt elimination and reduced interest rates.  On one of the occasions, Plaintiff "pressed one" and was connected to a live representative from CM Solutions.

27.     The live person was a Mediators representative who had a thick accent that seemed to indicate

the call was likely coming from outside the United States.  The Mediators representative falsely

informed Plaintiff they were from "Card member services" and asked Plaintiff personal information so

he could access Plaintiff's credit card accounts without permission.  The representative asked for

Plaintiff's birthdate, social security number, credit card number, and other identifiable information.

After a while the representative transferred Plaintiff to a "Financial Advisor" who also had a thick

"Indian" accent.

28.     The representatives stated they are calling from "card member services" or the "verification

team."

29.     The Defendants Mediators, Mr. Francisco, and Ms. Francisco, together ("Defendants"), employ

offshore unaccountable telemarketers outside the reach of the United States laws in an effort to avoid

accountability under the TCPA.  The Defendants are aware of the false and misleading statements made

by the telemarketers and they approve of, and ratify, the behavior.

30.     The Defendants Mediators, Mr. Francisco and Ms. Francisco's scheme involves charging

consumers thousands of dollars on their credit cards and telling the consumer to not worry about the

charges because the "charge for the fee will be eliminated along with the consumers existing debts."

31.     The Defendants Mediators, Mr. Francisco and Ms. Francisco then tell the consumers to pay their

minimum payment on their credit cards for three to four months and then their debt will be eliminated.

32.     The Defendants tell consumers to pay the minimum payments in order to buy time and avoid the

consumer doing a charge back and reversing the charge once the consumer realizes that no debts are

being eliminated and they have been scammed.

33.     Defendants have approved and adopted a clandestine robocalling operation in which the Defendant does not ever reveal their true identity until the contract is given at the end of the process so they may charge thousands of dollars to consumers credit cards in advance of services rendered.

34.     Defendants Anthony Francisco and Andrea Francisco know about and authorized the fraud being committed and authorized the behavior because it benefits them financially.

35.     Defendants Mr. Francisco and Ms. Francisco instructed their employees to attempt to coerce Plaintiff into allowing their employees and agents to charge his credit card $5,350 without performing any services or eliminating any debts.

36.     The contract Defendants finally sent Plaintiff said it was CM-Solutions behind the phone calls with the prerecorded voice messages.

37.     The contract Defendants sent Plaintiff has an address of 5950 Hazeltine National Drive, Suite 615 Orlando, Florida 32822 that was confirmed to be the principal address for Debt Mediators, LLC.

38.     Plaintiff called phone number (407) 294-5490 found online that is listed for the registered agent Ann Surjan and there was no answer.

39.     Moments later Plaintiff received a call back from phone number (954) 906-0950. Plaintiff answered and it was Ann Surjan who stated she was returning a missed call and confirmed she was with CM-Solutions.

40.     Defendants Mediators, Mr. Francisco, and Ms. Francisco instructed their agents to falsely claim they would eliminate Plaintiff's credit card debt completely within three months if Plaintiff allowed them to charge $5,350 on his credit card.  Defendants Mediators, Mr. Francisco and Ms. Francisco knowingly and willfully accept payments in advance of "debt elimination" services performed in violation of the Telemarketing Sales Rules (TSR).  16 C.F.R. § 310.4(a)(5)(i).

41.     Defendants Mr. Francisco and Ms. Francisco have authorized the robocalling with prerecorded voice messages from "Sara from Discover" to be placed to millions of American consumers.

42.     Defendant Mediators, Mr. Francisco and Ms. Francisco's representatives on multiple occasions misrepresented themselves and stated they were calling from Plaintiff's credit card company in an attempt to defraud Plaintiff and trick him into believing the phone calls were legitimate attempts from his credit card company to lower his interest rates and save Plaintiff money.  16 C.F.R. § 310.4(d)(1).

43.     Defendants Mediators, Mr. Francisco, and Ms. Francisco actively engage in fraud and multiple states are now enacting legislation at the state level to combat the proliferation of companies engaged in "debt relief" and their attempts to defraud consumers.

44.     Defendants and their agents and co-conspirators amassed lists of thousands of potential customers from public records, and data aggregators and then placed phone calls using auto dialing technology *en masse* to market their products.

45.     Defendants Mr. Francisco and Ms. Francisco participated in, facilitated, directed, authorized, knew of or willfully ignored the unlawful robo calling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robo calling.

46.     Defendants Mr. Francisco and Ms. Francisco have knowledge of and have adopted and maintained TCPA violations as a sales strategy.

47.     Defendants Mr. Francisco and Ms. Francisco refuse to take any action to stop or curtail the unlawful sales practices and robo calling because these practices benefit them financially.

48.     Defendants Mediators, Mr. Francisco, and Ms. Francisco knew the calls were being directed into the Western District of Texas and the Defendants knew these actions could cause the Defendants to be summoned into court as a result of those actions.

49.     Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with any Defendants prior to the calls alleged herein.

50.     Plaintiff has been on the Do Not Call Registry since December 2007.

51.     Plaintiff asked for a copy of Defendants Do Not Call Policy and was not given a copy.

52.     Each and every call was initiated using a spoofed caller ID, and each and every telemarketer the Plaintiff spoke with failed to properly identify themselves and the parties they were calling on behalf of.

53.     Defendant Mediators, Defendant Ms. Francisco, and Defendant Mr. Francisco are engaged in "Debt Relief" of credit cards. The services marketed to Plaintiff Callier on the phone and the contracts sent to Plaintiff Callier via email were for credit card "Debt Relief" services.

54.     Defendants Mediators, Mr. Francisco and Ms. Francisco made false and misleading promises to "eliminate" Plaintiff's credit card debts through a "Debt validation" process.

55.     The Federal Trade Commission says:

> "Debt relief service scams target consumers with significant credit card debt by falsely promising to negotiate with their creditors to settle otherwise reduce consumers' repayment obligations.  These operations often charge cash-strapped consumers a large up-front fee, but then fail to help them settle or lower their debts – if they provide any service at all.  Some debt relief scams even trout their services using automated "robocalls" to consumers on the Do-Not-Call List."  Debt Relief and Cred https://www.ftc.gov/news-events/media-resources/consumer-finance/debt-relief-credit-repair-scamsit Repair Scams | Federal Trade Commission (ftc.gov)

56.     The Federal Trade Commission has filed numerous lawsuits in an attempt to combat the proliferation of "Debt Relief" companies committing fraud against American citizens.  Numerous states have also begun passing laws to combat this fraud.

57.     Defendants Mediators, Mr. Francisco, and Ms. Francisco collectively knowingly and willfully mislead Plaintiff with respect to the elimination of his credit card debts.

58.     Defendants Mediators, Mr. Francisco and Ms. Francisco violated the Tex. Bus. and Com. Code and committed a deceptive trade practice when it promised to "eliminate" Plaintiff's valid debts without harm to his personal credit and attempted to collect payment in advance.

59.     Defendants Mediators, Mr. Francisco, and Ms. Francisco committed fraud and a deceptive trade practice by requiring payment in advance of the elimination of their clients debts.

60.     Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents.  Plaintiff is a Texas resident.

61.     Defendants Mediators, Mr. Francisco and Ms. Francisco knowingly, willfully, and deceptively market "debt relief" services in Texas, to Texas citizens.

62.     Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes and ethical practices for the solicitation of "debt relief."

63.     Defendants Mediators, Mr. Francisco and Ms. Francisco participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

64.     Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

65.     Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing

calls consumed part of this capacity.

66.     No emergency necessitated the calls.

67.     Mr. Callier requested a copy of Defendants do-not-call policy.

68.     None of the Defendants ever sent Mr. Callier any do-no-call policy.

69.     On information and belief, the Defendants did not have a written do-not-call policy while it was

sending Mr. Callier the unsolicited calls.

70.     On information and belief, the Defendants did not train its agents who engaged in telemarketing

on the existence and use of any do-not-call list.

71.     Defendants collectively made the following calls to Plaintiff:

| Call Phone Number | DATE | TIME |
|---|---|---|
| 770-809-0823 | 9/9/2021 | 2:21 PM |
| 614-954-3821 | 9/9/2021 | 10:24 AM |
| 614-954-3821 | 9/9/2021 | 1:54 PM |
| 614-954-3821 | 9/9/2021 | 3:45 PM |
| 614-954-3821 | 9/9/2021 | 3:47 PM |
| 614-954-3821 | 9/9/2021 | 3:53 PM |
| 614-954-3821 | 9/9/2021 | 4:18 PM |
| 614-954-3821 | 9/9/2021 | 4:44 PM |
| 614-954-3821 | 9/9/2021 | 4:51 PM |
| 614-954-3821 | 9/9/2021 | 4:52 PM |
| 614-954-3821 | 9/10/2021 | 11:17 AM |
| 614-954-3821 | 9/10/2021 | 12:00 PM |
| 614-954-3821 | 9/16/2021 | 4:05 PM |
| 614-954-3821 | 9/22/2021 | 9:47 AM |
| 614-954-3821 | 9/22/2021 | 12:16 PM |
| 614-954-3821 | 9/22/2021 | 12:31 PM |
| 614-954-3821 | 9/22/2021 | 12:32 PM |
| 614-954-3821 | 9/22/2021 | 12:33 PM |
| 614-954-3821 | 9/22/2021 | 12:34 PM |
| 614-954-3821 | 9/22/2021 | 1:35 PM |

| Call Phone Number | DATE | TIME |
|---|---|---|
| 614-954-3821 | 9/22/2021 | 1:35 PM |
| 614-954-3821 | 9/22/2021 | 1:44 PM |
| 614-954-3821 | 9/22/2021 | 2:50 PM |
| 614-954-3821 | 9/22/2021 | 2:58 PM |
| 614-954-3821 | 9/22/2021 | 3:07 PM |
| 614-954-3821 | 9/22/2021 | 3:22 PM |
| 614-954-3821 | 9/22/2021 | 3:27 PM |
| 614-954-3821 | 9/22/2021 | 3:32 PM |
| 614-954-3821 | 9/22/2021 | 3:38 PM |
| 614-954-3821 | 9/22/2021 | 4:03 PM |
| 614-954-3821 | 9/27/2021 | 9:39 AM |
| 614-954-3821 | 9/27/2021 | 10:20 AM |
| 614-954-3821 | 9/27/2021 | 12:09 PM |
| 614-954-3821 | 9/27/2021 | 2:16 PM |
| 614-954-3821 | 9/27/2021 | 2:18 PM |
| 936-342-3853 | 10/15/2021 | 9:05 AM |
| 210-920-3130 | 10/15/2021 | 4:26 PM |
| 903-712-3520 | 10/18/2021 | 1:46 PM |
| 817-736-3783 | 10/18/2021 | 1:51 PM |

## VICARIOUS LIABILITY OF THE SELLERS

72.     These parties are vicariously liable under the theories of actual authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

73.     The Defendants Mediators, Mr. Francisco and Ms. Francisco are the liable parties as the direct beneficiary of the illegal telemarketing calls as he stood to gain the Plaintiff as a client and quoted the Plaintiff their services in debt relief.

74.     The contracts show that the beneficial party who was gaining customers was Defendant Mediators.

75.     Defendants Mr. Francisco and Ms. Francisco authorized a third-party telemarketer to generate prospective customers.  Defendants Mr. Francisco and Ms. Francisco hired a third-party to promote its

products and services.  Defendants' integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that the third-party telemarketer was the telemarketing department of Defendants Mediators, Mr. Francisco and Ms. Francisco

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE
## DETERRENT EFFECT AND PURPOSE OF THE TCPA

76.      As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

## DEFENDANTS MR. FRANCISCO AND MS. FRANCISCO ARE PERSONALLY LIABLE

77.      "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable.  See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985).

78.      The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable."  *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where ethe defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

79.      Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be
> personally liable under the TCPA if he had direct, personal participation in or personally

authorized the conduct found to have violated the statute, and was not merely tangentially involved.  Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers.  As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct.  Congress surely did not intend to permit such a result in passing the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations.  They were the two persons who controlled all of Blastfax's day-to-day operations.  They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct.  And they did so with their eyes and pocketbooks wide open.  After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA.  On February 9, 2001, they knew they were.  Yet they continued to direct their company to send unsolicited intrastate fax advertisements.  This is fare more than a simple derivative liability case.  Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit."  Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

80.    The Same Court held that corporate officers were also personally liable for DTPA violations

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001

81.    Defendant Mr. Francisco formed Debt Mediators in August 2011, as the sole owner and officer.

Mr. Francisco has remained a managing officer and registered agent of Debt Mediators for the entirety

of the existence of Debt Mediators.  Defendant Mr. Francisco has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Mediators.

82.    In December 2011, Defendant Ms. Francisco was added as an officer and Managing Member of Defendant Debt Mediators. Ms. Francisco knowingly and willfully allowed the TCPA and DTPA violations to continue.  Ms. Francisco has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Mediators.

83.    Ms. Francisco and Mr. Francisco developed the business model and oversee the day-to-day operations of Defendant Mediators.

84.    Mr. Francisco and Ms. Francisco as the principal owners and operators of Defendant Mediators controlled the day-to-day operations of Defendant Mediators and directed their employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit the "debt elimination" services for monetary gain.

85.    Mr. Francisco and Ms. Francisco have instructed their employees to make unsolicited phone calls to sell "debt elimination" services.  These solicitations originate through randomly generated phone calls to prospective solicitors without their knowledge or consent of the phone calls.

86.    Mr. Francisco and Ms. Francisco approved the telemarketing scripts, signed the contracts with the telemarketers, pay commissions for the illegal behavior, and direct the illegal calls to be made for their financial benefit.

87.    Mr. Francisco and Ms. Francisco knowingly and willfully ignore the law.  They solicit debt relief services and collect money upfront before any services are performed or any debts are forgiven.  The violations are the direct result of the instructions Mr. Francisco and Ms. Francisco have given to their agents, employees, solicitors, salespersons, and others that carry out their schemes.

88.     Mr. Francisco and Ms. Francisco are not merely bystanders.  They are the masterminds that schemed, planned, directed, initiated and controlled the illegal and fraudulent behavior.

89.     Mr. Francisco and Ms. Francisco sanctioned and ordered the solicitation of debt relief services to Plaintiff Callier, a Texas resident.

90.     Defendants Mr. Francisco and Ms. Francisco are well aware their conducted violated the TCPA and Tex. DPTA and refuse to alter their behavior.  Defendants Mr. Francisco and Ms. Francisco are the sole owners of Defendant Mediators and the only persons with the power to make the unlawful, fraudulent, and unethical behavior stop.  Yet, they have taken no steps to stop the behavior because the behavior benefits them financially.  Mr. Francisco and Ms. Francisco continue to break the law with their eyes and pocketbooks wide open.

91.     Defendants Mr. Francisco and Ms. Francisco have operated as a common enterprise while engaging in the deceptive acts and practices and violations of law and formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Mediators that constitutes a common enterprise.  Since 2011 Mr. Francisco and Ms. Francisco have been the only officers, directors, and shareholders of Defendant Mediators.

92.     Defendants Mediators, Mr. Francisco and Ms. Francisco should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

93.     Defendants Mr. Francisco and Ms. Francisco should be held liable because to do otherwise would simply allow the individuals to simply dissolve Mediators, set up a new corporation, and repeat their conduct.  This would result in both the TCPA and DTPA being unenforceable. .

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

94.     Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

95.     Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

96.     Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

97.     Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

98.     The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone resulting in reduced enjoyment and usage of my cell phone.

### The Plaintiff's cell phone is a residential number

99.     The TCPA "expressly covers" calls to calls placed to cell phones.  Section 227(b)(1)(A)(iii) makes it "unlawful for any person" to make a call "to any telephone number assigned to a … cellular telephone service" without prior consent.  Although it is true that §§ 227(b)(1)(B) and 227(c) regulate calls made to "residential" numbers, Defendants' reading is foreclosed by binding circuit precedent.  In Canor, the Fifth Circuit held that TCPA protects calls made to cell phones, even though the statute states the term "residential numbers." Citing § 227(b)(1)(A)(iii), which prohibits calls to cell phones, the Cranor panel rejected Defendants' reading, holding that if Congress was exclusively concerned with protecting privacy within the home, as Defendants contend, "it would make little sense to prohibit telemarketing to mobile devices for use outside the home."  *Callier v. Multiplan, Inc*., EP-21-CV-00318-FM (W.D. Tex. Aug. 26, 2021).

100.     Further it is well settled that Court must "give binding deference to permissible agency

interpretations of statutory ambiguities because Congress has delegated to the agency the authority to interpret those ambiguities 'with force of law.' *City of Arlington v. FCC*, 569 U.S. 290, 317 (2013) (Roberts, C.J. dissenting) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001)). The TCPA expressly directs the FCC "to prescribe implementing regulations." Mims, 565 U.S. at 371; *see also* TCPA § 227(b)(2). As the FCC is responsible for implementing the TCPA, its interpretation of the statutory text warrants deference unless it is clearly unreasonable. *See City of Arlington*, 569 U.S. at 296. The FCC has interpreted the TCPA "to allow wireless subscribers to benefit from the full range of TCPA protections." See In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Red 14014, 63 (F.C.C. June 26, 2003). *Callier v. Multiplan, Inc.*, EP-21-CV- 00318-FM (W.D. Tex. Aug. 26, 2021).

101.     Binding Fifth Circuit precedent and FCC rulings dictate that cell phones receive the full range of protections of the TCPA.

### Violations of the Texas Business and Commerce Code § 302.101

102.     The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

103.     Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### I.     FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1.     Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent.

3.      Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4.      Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.      Mr. Callier also seeks a permanent injunction prohibiting Defendant and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.  SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

1.      Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a.      a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

b.      training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

      c.     in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

3.    Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4.    Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5.    Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III.  THIRD CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(c))

### (Against All Defendants)

1.    Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.    The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the national do-not-call registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

3.    Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

---

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

## IV.  FOURTH CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 305.053

### (Against All Defendants)

1.      Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

3.      Mr. Callier is entitled to an award of at least $500 in damages for each such violation.

**Texas Business and Commerce Code 305.053(b)**

4.      Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## V.  FIFTH CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)

### (Against All Defendants)

1.      Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone without his prior express written consent.

3.      Plaintiff is entitled to an award of up to $5,000 in damages for each such violation.

**Texas Business and Commerce Code 302.302(a).**

4.      Plaintiff is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees.  **Texas Business and Commerce Code 302.302(d).**

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for 37 calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.      An award to Mr. Callier of damages, as allowed by law under the TCPA;

H.      An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

I.      Such further relief as the Court deems necessary, just, and proper.


January 11, 2022,                          Respectfully submitted,


*Brandon Callier*

Brandon Callier
Pro-se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com