IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **BRANDON CALLIER,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-21-CV-278-DB** |
| | § | |
| **DEBT MEDIATORS, LLC,** a Florida | § | |
| Limited Liability Company, a/k/a **CM** | § | |
| **SOLUTIONS LLC, ANTHONY** | § | |
| **FRANCISCO,** and **ANDREA** | § | |
| **FRANCISCO,** | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS DEBT MEDIATORS, LLC, ANTHONY FRANCISCO, AND ANDREA FRANCISCO'S MOTION TO DISMISS

On this day, the Court considered Defendants Debt Mediators, LLC a/k/a CM Solutions LLC, Anthony Francisco, and Andrea Francisco's (collectively "Defendants") "Motion to Dismiss Plaintiff's First Amended Complaint" ("Motion"), filed in the above-captioned case on February 25, 2022.   ECF No. 20.   Therein, Defendants ask that the Court dismiss Plaintiff Brandon Callier's ("Mr. Callier") claim that they violated a regulation related to the Telephone Consumer Protection Act ("TCPA").   *Id.*; *see also* Pl.'s First Am. Compl. 19–20, ECF No. 19 ("Complaint").   Defendants argue that there is no private right of action to enforce the violation. *Id.*   The issue before the Court is thus whether the regulation is enforceable through a private right of action found in the TCPA.   Mr. Callier responded to Defendants' Motion on March 10, 2022, ECF No. 24, and Defendants replied on March 17, 2022, ECF No. 26.

## BACKGROUND

Mr. Callier alleges that last year, he received dozens of calls from a credit card scam operation that posed as a program offering credit card debt elimination and reduced interest rates.   Compl. 5–6, ECF No. 19.   Mr. Callier believes that these calls violated the Telephone

Consumer Protection Act ("TCPA") and wishes to hold the responsible parties liable.   *Id.* at 6, 13.

Congress enacted the TCPA in 1991 in response to consumer outrage "over the proliferation of intrusive nuisance calls to their homes from telemarketers."   *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6574–75 (2013).   The TCPA gave "the FCC [the Federal Communications Commission] the authority to regulate interstate and intrastate telemarketing in order to enable consumers to curb calls that had 'become an intrusive invasion of privacy.'"   *Id.* at 6575 (citing *Mainstream Mktg. Servs., Inc. v. FTC*, 358 F.3d 1228, 1235 (10th Cir. 2004)). In addition to providing the FCC with regulatory authority, the TCPA created private rights of action for certain violations.   *Id.*

The dispute raised by the Motion centers on one of those private rights of action and turns on the technical details of the TCPA and of the regulations that the FCC crafted under the authority of the Act.   The TCPA is codified at 47 U.S.C. § 227, and the regulations relating to it are found at 47 C.F.R. §227.   The private right of action in question is found at 47 U.S.C. § 227(c), a section of the TCPA which provides for "[t]he protection of subscriber privacy rights." Compl. 11, ECF No. 19; *see also* 47 U.S.C. § 227(c).   Section 227(c)(5) provides a private right of action to

> [a] person who has received more than one telephone call within
> any 12-month period by or on behalf of the same entity in violation
> of *the regulations prescribed under this subsection.*

47 U.S.C. § 227(c)(5) (emphasis added).

Mr. Callier argues that §64.1200(d) is one of those "regulations prescribed under this subsection" made actionable by 47 U.S.C. § 227(c)(5)'s private right of action.   Resp. 4, ECF No. 24.   Those regulations require telemarketers to maintain and train on a written do-not-

call policy and to provide certain identifying information.    47 CFR § 64.1200(d)(1), (2), and

(4). Specifically, the relevant text of §64.1200(d) reads:

> **(d)** No person or entity shall initiate any call for telemarketing
> purposes to a residential telephone subscriber unless such person
> or entity has instituted procedures for maintaining a list of persons
> who request not to receive telemarketing calls made by or on
> behalf of that person or entity. The procedures instituted must meet
> the following minimum standards:
>> **(1) Written policy.** Persons or entities making calls for
>> telemarketing purposes must have a written policy, available
>> upon demand, for maintaining a do-not-call list.
>> **(2) Training of personnel engaged in telemarketing.**
>> Personnel engaged in any aspect of telemarketing must be
>> informed and trained in the existence and use of the do-not-
>> call list.
>> [ . . . ]
>> **(4) Identification of sellers and telemarketers.** A person or
>> entity making a call for telemarketing purposes must provide
>> the called party with the name of the individual caller, the
>> name of the person or entity on whose behalf the call is being
>> made, and a telephone number or address at which the person
>> or entity may be contacted . . ..

47 CFR § 64.1200(d)(1), (2), and (4).    Mr. Callier alleges that by failing to maintain and train

on a written do-not-call policy and by failing to provide certain identifying information,

Defendants have violated the regulation.    Compl. 19–20, ECF No. 19.

Defendants ask the Court to dismiss Mr. Callier's § 64.1200(d) noncompliance

claim because they assert that no private right of action exists to enforce that section.    Mot. 1,

ECF No. 20.    They state that the regulations established in § 64.1200(d) were promulgated not

under 47 U.S.C. § 227(c), but under 47 U.S.C. § 227(d) of the TCPA, which prescribes

"[t]echnical and procedural standards" and contains no provision analogous to that in § 227(c)

allowing suits based "violation[s] of the regulations prescribed under this subsection . . .."    *Id.* at

2; 47 U.S.C. § 227(c), (d).    Thus, they argue, no private right of action exists to enforce

violations of § 64.1200(d).    Mot. 1, ECF No. 20.

3

The Court finds that § 64.1200(d) was promulgated under § 227(c) and thus that Mr. Callier is able to sue to enforce it.   Accordingly, the Court will deny the Motion.

## LEGAL STANDARD

Defendants move to dismiss Mr. Callier's claim under Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").   Mot. 1, ECF No. 20.

Rule 12(b)(6) permits dismissal if a party fails "to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8(a)"), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."   *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009) (citing Fed. R. Civ. P. 8(a)(2)).

"[A] complaint may simultaneously satisfy Rule 8's technical requirements but fail to state a claim under Rule 12(b)(6)."   *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Bank of Abbeville & Tr. Co. v. Commonwealth Land Title Ins. Co.*, 201 Fed. App'x. 988, 990 (5th Cir. 2006) (unpublished)).   "'Rule 8(a)(2) specifies the conditions of the *formal* adequacy of a pleading,' but '[i]t does not specify the conditions of its *substantive* adequacy, that is, its legal merit.'"   *Id.* at 385–86 (quoting *Bank of Abbeville*, 201 Fed. App'x. at 990).   Dismissal under 12(b)(6) is thus proper when "the plaintiff would not be entitled to relief under any set of facts or any possible theory that it could prove consistent with the complaint's allegations."   *Id.* at 386 (quoting *Bank of Abbeville*, 201 Fed. App'x. at 990) (internal quotations omitted).   In such a situation, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."   *Twombly*, 550 U.S. at 558 (citing 5 Wright & Miller § 1216, at 233–234) (internal quotations and alterations omitted).

## ANALYSIS

Whether § 64.1200(d) was promulgated under § 227(c) or § 227(d) has not been addressed in the Fifth Circuit.   However, most courts addressing this issue—including the Third, Sixth, and Eleventh Circuits—have found that § 64.1200(d) was promulgated under § 227(c) and is thus enforceable by that section's private right of action.   *Persichetti v. T-Mobile USA, Inc.*, 479 F.Supp.3d 1333, 1338-39 (N.D. Ga. 2020) (citing various district courts that have held § 64.1200(d) was promulgated under § 227(c)); *Shelton v. Fast Advance Funding, LLC*, 805 F. App'x 156, 157 (3d Cir. 2020); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019); *Charvat v. NMP, LLC*, 656 F.3d 440, 443–44 (6th Cir. 2011)*; but see Burdge v. Ass'n Health Care Mgmt., Inc.*, No. 1:10-CV-00100, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) (finding that the regulations found in § 64.1200(d)(4) are technical and procedural in nature and were promulgated pursuant to § 227(d) of the TCPA).

Ultimately, the Court agrees with the majority based on the text and intent of the statute and regulations.   It finds that § 64.1200(d) was promulgated under § 227(c) and thus is enforceable by Mr. Callier using the right of action found in § 227(c)(5).

### 1. The text and purpose of the statute and regulations indicate that the regulations in § 64.1200(d) were promulgated under § 227(c) to protect subscriber privacy.

Agencies like the FCC were created to resolve a ubiquitous problem—Congress has too much to do in too little time.   To address the dearth of resources in Congress, Congress can craft statutes that delegate certain powers to agencies.   Agencies then use those powers to create and enforce regulations.   The Supreme Court has made it clear that when Congress delegates its powers to agencies, it must "lay down by legislative act an intelligible principle to which the person or body authorized to act is directed to conform."   *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 458 (2001) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S.

394, 409, (1928)).

The Supreme Court has been clear, then, that there must be *some* relationship between the statutes passed by Congress and the regulations passed by agencies.   However, higher courts have not articulated a clearly defined method of connecting discrete portions of statutes to their corresponding regulations—a necessary step in addressing the issue in this case. One law professor suggests that one way to decipher regulations is "in light of their purposes" because "the role of agencies as implementers of established statutory aims suggests that regulations have a purposive character—that is, they prescribe means to implement the ends provided by the statute."   Kevin M. Stack, *Interpreting Regulations*, 111 MICH. L. REV. 355, 377 (2012).

Thus, when a court attempts to determine what part of a statute a regulation was promulgated under, as this Court does here, it should consider how the means set out in regulations relate to the goals set out by the statute.   To do so, it must look closely at the text of the regulation and the text of the statute.   Therefore, the Court will analyze both the text and purpose of the statute— § 227(c)—and the regulations—§ 64.1200(d)—together.

The Court begins with the goal of Section 227(c) of the TCPA: "Protection of subscriber privacy rights."   47 U.S.C. § 227(c).   The text of the statute directs the FCC to "initiate a rulemaking proceeding concerning the need to *protect residential telephone subscribers' privacy rights* to avoid receiving telephone solicitations to which they object."   *Id.* at § 227(c)(1) (emphasis added).   Further, § 227(c) required the FCC to "evaluate . . . the potential use of industry-based or company-specific 'do not call' systems . . . for their effectiveness in protecting [] privacy rights . . . ."   47 U.S.C. § 227(c)(1)(A).

Section 227(d), on the other hand, relates to the "technical and procedural

6

standards" and specifically refers to "telephone facsimile machines" and "artificial or prerecorded voice systems." 47 U.S.C. § 227(d). It requires the FCC "to revise regulations setting technical and procedural standards for telephone facsimile machines and artificial or prerecorded voice systems." *Id.* It makes no mention of do-not-call lists. *Id.* Further, § 227(d) does not use the term "subscriber" but refers only to the devices used for telemarketing communications. *See* 47 U.S.C. § 227(d).

Faced with these two interpretations of the possible statutory sources for the regulation at issue, the Court now turns to the question at hand: Is § 64.1200(d) more related to the protection of subscriber privacy rights or to the technical and procedural requirements that Congress imposed on telemarketers using certain machines and systems?

Like § 227(c), the regulations in § 64.1200(d) are primarily concerned with the protection of individual privacy rights." *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020). The regulations provide minimum standards that must be met to ensure that telemarketers do not make calls to people who have requested to not receive them. 47 C.F.R. § 64.1200(d). Do-not-call regulations further the goal of protecting subscribers from unwanted telemarketing calls and thus align with the purpose of § 227(c). Additionally, § 64.1200(d)'s reference to the subscriber more closely relates to the plain language of § 227(c) than to the purely technical language of §227(d).

Citing a case out of the Southern District of Ohio, Defendants argue that "the requirements of § 64.1200(d) are more closely aligned with the technical procedural standards of § 227(d)." Mot. 2–3, ECF No. 20 (citing *Burdge v. Ass'n Health Case Mgmt., Inc.*, 2011 U.S. Dist. LEXIS 9879, at *10 (S.D. Ohio Feb 2, 2011)). There, the court found that the portion of "the regulations regarding identification and the provision of a telephone number or address

7

found in 64.1200(d)(4) are technical and procedural in nature and were promulgated pursuant to section 227(d) of the TCPA." *Burdge*, 2011 U.S. Dist. LEXIS 9879, at *10.

It is true that both § 227(d) of the statute and § 64.1200(d)(4) of the regulations require telemarketers to provide certain identifying information to the people they call. 47 U.S.C. § 227(d); 47 C.F.R. § 64.1200(d)(4). But § 227(d) speaks about that identifying information only in the context of certain telemarketing systems, like artificial or prerecorded voice systems. U.S.C. § 227(d). In contrast, § 64.1200(d)(4) mandates that all sellers and telemarketers provide the "called party" with the information, signaling that the purpose of the regulation is to protect the privacy rights of those individuals receiving calls. 47 C.F.R. § 64.1200(d)(4); *see also Hand v. Beach Entm't KC, LLC*, 456 F. Supp. 3d 1099, 1124–25 (W.D. Mo. 2020) ("Even accepting Defendants' argument that the . . . standards described in § 64.1200(d) could fairly be characterized as 'procedural,' 47 U.S.C. § 227(d) restricts its applicability to technical and procedural standards of these particular devices whereas 47 C.F.R. § 64.1200(d) neither mentions nor restricts its applicability to these devices.")

A different set of regulations, found at 47 C.F.R. § 64.1200(b), fits the description of "[t]echnical and procedural standards specific to automated calls . . . included in § 227(d)" more closely than the regulations found in 47 C.F.R. § 64.1200(d). *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011).

Thus, this Court, like the majority of the courts that have examined the issue, finds § 64.1200(d) was promulgated under § 227(c) and that it may be enforced using that section's private right of action.

8

**CONCLUSION**

Defendants move to dismiss Mr. Callier's claim that they violated 64.1200(d). The Court finds that Mr. Callier can enforce the regulation because it was promulgated under § 227(c) and is thus enforceable through that section's private right of action.   Therefore, the Defendants' Motion to Dismiss will be denied.

Accordingly, **IT IS HEREBY ORDERED** that Defendants Debt Mediators, LLC a/k/a CM Solutions LLC, Anthony Francisco, and Andrea Francisco's "Motion to Dismiss Plaintiff's First Amended Complaint," ECF No. 20, is **DENIED**.

SIGNED this ___5th___ day of **May 2022.**

_____
**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**

9